## SCUDDER *a.* GORI.

*New York Superior Court ; General Term, December,* 1864.

PLEADING.—CONTRACTS OF MARRIED WOMEN.—ACCOMMODATION
NOTE.

An answer, to a complaint upon a promissory note, that the maker is a married
woman, is sufficient as a confession and avoidance, and the plaintiff may be
compelled to reply to such answer, showing the consideration, and that the
note was for the benefit of her estate.

A promissory note made by a married woman does not import a consideration,
and is not *per se* negotiable.

The Laws of 1860 and 1862 have not permitted a married woman to give an ac-
commodation note ; and a person taking such a note even *bona-fide,* and for
value, cannot recover upon it, against her.

Evidence that the defendant has sued and been sued in her own name, is com-
petent upon the issue of marriage, and it is error in the court to reject such
evidence, and withdraw the question from the jury.

This action was brought by John Scudder upon a promissory
note made by the defendant, Catherine Gori, against her and
the indorser. The complaint was in the usual form of a com-
plaint upon a promissory note. Mrs. Gori, alone, answered as
follows :

" That at and before the times stated in the complaint, she
was, and still is, a married woman, the wife of Ottaviano Gori."

Upon the trial before Mr. Justice White, in May, 1862, the
defendant claimed the affirmative, and obtained the opening.*

---

* In the case of OPDYKE *a.* WEED (*Supreme Court, First District; Circuit, December,*
1864), it was *held,* that where all the allegations of a complaint for libel, except
the amount of damages, are admitted by the answer, the plaintiff will still have
the right to open, to show malice, and the extent of the injury, even where no
special damages have been laid, and malice has not been in terms alleged. A
complaint for libel need not contain a special averment of malice.

George Opdyke, the plaintiff, brought an action against Thurlow Weed for
damages sustained by libels published in the Albany Evening Journal. The
complaint did not in terms state that the libel was malicious, nor did it state any
special damage. The answer admitted the publications, but averred that they
were true, and made after careful examination of their truth.

Upon the trial of the cause before MASON, J., and a jury, *Edwards Pierrepont,* for

The plaintiff objected to evidence of the marriage, on the ground that the note being negotiable, the answer was insufficient. The objection was overruled and plaintiff excepted.

The defendant having closed; the plaintiff offered to prove that the defendant was carrying on business as a single woman. The defendant objected on the ground of surprise, and the court directed the plaintiff to put in a reply.

A reply was put in, denying any knowledge of the de-

---

the defendant, moved that the court direct the defendant to begin the case; insisting that as there was no special malice alleged and no special damages claimed, and no denial in the answer, there was nothing for the plaintiff to prove, and the burden of the case fell upon the defendant; and cited Code of Procedure, § 165.

*James Emott*, for the plaintiff. The plaintiff has the right to prove malice in fact, and to prove the extensive circulation of the newspaper in which the libels were published, in order to enhance the damages. Lord Denman, sitting with Lord Lyndhurst and Baron Bailey, decided, in a case exactly similar to this, that the plaintiff was entitled to begin the case, and overruled the decision in the case of Cooper a. Whitely, where the judge was of an opposite opinion. In the case of Huntington a. Conkey (33 *Barb.*, 218), there was a similar decision, which was affirmed by the Monroe general term. But the most important case of all was that of Fry a. Bennett (3 *Bosw.*, 200), where this point arose and was disposed of after the English fashion. The case came up before Judge Oakley, who ruled that the right to begin was with the plaintiff, and Chief-justice Bosworth affirmed the judgment. The question then came up before the Court of Appeals at Albany, where it was fully argued, and the result was that the court affirmed the ruling of the lower court. In the case of Littlejohn a. Greeley (11 *Abbotts' Pr.*, 41), there was a similar decision; so that it may fairly be considered the practice in all our courts.

*William M. Evarts*, for the defendant, urged that Fry a. Bennett, and Littlejohn a. Greeley, were distinguishable from this case; for the circulation of the paper did not affect the question of malice; and as the plaintiff had not alleged any special damage, it would be unfair to allow him to give evidence of any special damage.

MASON, J.—I think the rule is as is stated by the counsel for the plaintiff. In cases of this description especially, the plaintiff should have the right of introducing testimony as to the question of damages. In no other way can the damages be enhanced or mitigated except by proof.

It is true he has not stated the extent of the damages in the pleadings; but that does not prevent him from putting in evidence the circulation of the Evening Journal, with the view of getting at the question of damages. I am also inclined to think, in reference to the question of malice, that it is not necessary to make a special averment in the pleadings. There may be some doubt about the rule; but I think the law is to that effect. I so hold.

Accordingly, the plaintiff opened the case.

fendant's marriage, and averring that the note in question had been given to the defendant Pierce, in exchange for his note during some business transactions; and that Pierce transferred it to the plaintiff for value as business paper.

On the renewal of the trial, evidence was given as to the marriage, as to the consideration of the note, and as to the consideration given by the plaintiff to Pierce upon the note; also, as to Mrs. Gori's having carried on business for some years, and brought and defended suits, as if a single woman. The judge dismissed the complaint, and refused to submit the issues to the jury, and the plaintiff appealed.

*Samuel W. Judson*, for the appellant.—I. The evidence was unsatisfactory, and insufficient in law, to establish the alleged fact that the defendant Gori was a married woman. She claimed to hold the affirmative of the issue, and the onus of proving the marriage was upon her.

II. If the defendant was a married woman, she nevertheless was enabled under the statutes of this State to make a valid contract. The note was made after the act of 1860 passed. (*Laws of* 1860, 157, ch. 90, §§ 2, 8; Young a. Gori, 13 *Abbotts' Pr.*, 13; 26 *N. Y.*, 604, 622; Barton a. Beer, 35 *Barb.*, 78; S. C., 21 *How. Pr.*, 309; Klen a. Gibney, 24 *Ib.*, 31; Peters a. Fowler, 41 *Barb.*, 467; Coster a. Isaacs, 16 *Abbotts' Pr.*, 328; Aitken a. Clark, *Ib.*, note; 17 *Ib.*, 312.) If she was a married woman, she might be, and ought to be, under the circumstances of this case, and by the aid of the statutes on the subject, regarded as a *feme sole*. (Chapman a. Lemon, 11 *How. Pr.*, 235; 24 *Ib.*, 31; Gregory a. Paul, 15 *Mass.*, 31.)

III. The note itself, being negotiable and for value received, imports a consideration. Yet the court compelled the plaintiff to set up and prove the original consideration for the note, to which he was not an original party, when neither of the defendants had set up as a defence any want or failure of consideration. The origin and consideration of the note was peculiarly within the knowledge of the defendants, the maker and payee. The plaintiff, taking the note as indorsee before maturity, was not bound to inquire into the origin or consideration. The note did not appear on its face to have been made by a married woman. Gori, by making and issuing the note in the

manner and form she did, held herself out to the world as a *feme sole*. (Ogden a. Blydenburgh, 1 *Hilt.*, 182.) The holder of negotiable paper in such a position as this plaintiff, was never required to prove the origin and consideration of a note. Had the plaintiff contracted directly with the defendant, and had the contract not been negotiable, the case might be different.

IV. There was a sufficient consideration to make the note valid, although the plaintiff was not obliged by law to prove it, as claimed under the preceding third point. There was sufficient evidence on this point to submit the question to the jury. When two persons exchange notes, the note of each becomes the absolute property of the other; and each party has the right to dispose of the note which he or she receives as he or she sees fit; and each is bound to pay his or her own note respectively. (Cameron a. Chappell, 24 *Wend.*, 94; Dowe a. Schutt, 2 *Den.*, 621; Wooster a. Jenkins, 3 *Ib.*, 187; Odell a. Greenly, 4 *Duer*, 358; Nant. Pacific Bank a. Stebbins, 6 *Ib.*, 341; Davis a. McCready, 17 *N. Y.*, 230; Dillaye a. Parks, 31 *Barb.*, 132; Paine a. Hunt, 40 *Ib.*, 75.) Moreover, Gori used Pierce's note.

*S. W. & B. R. Roosevelt*, for the respondent.—I.. Any orders made in the course of the suit, but not at the trial, cannot be reviewed on this appeal.

II. The plaintiff paid nothing for the note, and is not the real party in interest, and the payee, Mr. Pierce, having failed to pay his exchange note, could not recover on the one in suit.

III. The Code has provided that her husband must be joined when a married woman is a party defendant, and there is nothing in the act of 1860, expressly, or by necessary implication, repealing that provision. (*Code*, § 114.) One statute is never regarded as repealing another by implication, unless they are absolutely inconsistent.

IV. Before the act of 1860, it will not be disputed that a married woman only bound her separate estate, by a general undertaking, when the debt was expressly contracted on the faith of such estate, or upon and for its benefit. (Yale a. Dederer, 18 *N. Y.*, 265, 282; 22 *Ib.*, 450; Curtis a. Engel, 2 *Sandf. Ch.*, 287; Dickerman a. Abrahams, 21 *Barb.*, 551; Goodall a.

McAdam, 14 *How. Pr.*, 385 ; North American Coal Co. *a.* Dyett, 7 *Paige*, 9 ; 20 *Wend.*, 570.)

V. A suit against her was a proceeding *in rem ;* and the property to be affected had to be described in the complaint, and this was not changed till the law of 1862, which was after the commencement of this action. (Charles *a.* Lowenstein, 26 *How. Pr.*, 29.)

VI. The law of 1860, passed in furtherance of previous acts for the protection of married women; while it allows her to enter into business, very properly does not make her liable for debts not contracted in the course of that business. (*Laws of* 1860, 157 ; Brown *a.* Hermann, 14 *Abbotts' Pr.*, 394.)

By the Court*—McCunn, J.—If the defendant was a married woman, and, by reason thereof, was not legally bound to pay the note in suit, the answer, assuming its statement to be true, was not insufficient. The exception to the ruling upon the objection that the answer was insufficient, as containing no defence, was therefore not well taken.

The amendment of pleadings during the trial is a matter of discretion with the court. The plaintiff did not allege surprise, and, indeed, could not truthfully have done so, as he must be presumed to have taken the amended matter into consideration in preparing for the trial.

The error of the counsel for the plaintiff was, in assuming at the trial that a promissory note made by a married woman imports a consideration, and is negotiable like such evidences of debt when made by single females.

At common law a married woman had no legal existence. The Legislature have thought proper to create some specific *status* for her, but she may not move one step further, or save as the law specifically directs or permits. The Legislature have removed certain disabilities pertaining to a married woman, but it has not as yet in terms permitted her to exchange notes as a matter of friendly accommodation. The law, it is true, permits her to engage in trade, and no doubt in pursuit of such business, notes and other obligations which were, and are alleged to have been, given in the course of business, can be re-

covered on against her, in like manner as if she were a *feme sole.*
So, again, if tending to benefit her separate estate, her obliga-
tion be given, intending to charge that estate, she could be
held liable; the law-makers seem to have wished to protect
and benefit her, and to leave the unfortunate dealer with her,
at his peril, to look to it that in all her transactions, presum-
ing upon her legal entity, she was within the scope and pre-
scribed limits which the law has given.

If these views are correct, the complaint might have been
dismissed, upon the plaintiff's resting his case. The complaint
did not state facts sufficient to constitute a cause of action
against the defendant, assuming it to be true that she was at
the time of making and delivering the note a married wo-
man.

There was some proof tending to establish that the defendant
was a married woman, whether or not it was sufficient in law,
or would have been satisfactory to the jury in an important in-
quiry, in view of testimony which was offered which might
have established that she was a single woman. The plaintiff
offered to prove that the defendant had sued and been sued
in her own name; and that there were numerous judgments
against her. This evidence was excluded, and the plaintiff ex-
cepted.

We think that this was erroneous; the important issue to be
determined, was whether the defendant in law or in fact was a
*feme sole* as to her liability upon the note sued upon; the
evidence of marriage, in fact, was not proven in such a manner
as would be required in an action for a divorce *a vinculo*, and the
offer of the plaintiff might have produced clear and positive tes-
timony contradictory of the case as made by the defendant.

The learned judge was therefore in error when he withdrew
the questions of fact from the jury, and directed the complaint
to be dismissed.

The judgment must be reversed, and a new trial ordered,
with costs to abide the event.

Justices MONCRIEF and GARVIN concurring.